**FILE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

HANOVER INSURANCE COMPANY,

               Plaintiff,

       -against-

GOLDSTEIN JEWELERS,
VAN CLEEF & ARPELS, INC. and
VAN CLEEF & ARPELS DISTRIBUTION, INC.,

               Defendants.

-------------------------------------------------------------------X

'09 CIV    45 24
Index No.

**VERIFIED COMPLAINT**

     Plaintiff HANOVER INSURANCE COMPANY ("Hanover"), by the undersigned

attorneys, CALLAN, KOSTER, BRADY & BRENNAN, LLP, seeks a declaratory judgment

against the defendants GOLDSTEIN JEWELERS, VAN CLEEF & ARPELS, INC. and VAN

CLEEF & ARPELS DISTRIBUTION, INC., and allege that:

### Introduction

    1.    This is a civil action seeking a declaratory judgment pursuant to 28 U.S.C.

§§2201 and 2202 declaring that Hanover has no obligation to defend or indemnify

Goldstein Jewelers or any other party that could be considered an insured in the case

entitled Van Cleef & Arpels Logistics, S.A., et al. v. Goldstein Jewelers, et al., venued in the

United States District Court for the Southern District of New York (07-CV-1290) (JLL) the

("underlying action"), pursuant to the terms of a Businessowners Insurance Policy that was

issued to Goldstein Jewelers, Inc. by Hanover.  Hanover asserts that all of the claims

asserted and damages sought in the underlying action are either outside the scope of

1

coverage under the policy, or, are excluded from coverage, and that therefore no coverage exists.

## The Parties, Jurisdiction and Venue

2.      At all times hereinafter mentioned, Hanover was and is an insurance company incorporated under the laws of New Hampshire and authorized to do business in the State of New York, having its principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653.

3.      Upon information and belief, defendant Goldstein Jewelers is a corporation organized under the laws of the state of New Jersey, having an office and place of business at 36 N. Dean Street, Englewood, New Jersey 07631-2807.

4.      Upon information and belief, Goldstein Jewelers is transacting and doing business in this judicial district and is subject to the personal jurisdiction of this court.

5.      Van Cleef & Arpels Logistics, S.A., is a corporation organized and existing under the laws of Switzerland, having an office and place of business at 8 Route de Chandolan, 1752 Villars - Sur - Glace, Switzerland.

6.      Defendant Van Cleef & Arpels, Inc. is a corporation organized and existing under the laws of the state of New York, having an office and place of business at 12 W. 57th Street, New York, New York 10019-3900.  Van Cleef & Arpels, Inc. is a licensed importer of Van Cleef & Arpels brand products, and is the exclusive licensee for the sale of such products at retail in the United States.

7.      Defendant Van Cleef & Arpels Distribution, Inc. is a corporation organized and existing under the laws of the state of Delaware, having an office and place of

2

business at 12 W. 57th Street, New York, New York 10019-3900. Van Cleef & Arpels Distribution, Inc. is a licensed importer of Van Cleef & Arpels brand products, and is the exclusive licensee for the sale of such products at wholesale in the United States. For the purposes of this complaint, except where specified, the interests of Van Cleef & Arpels Logistics, S.A., defendant Van Cleef & Arpels, Inc. and Van Cleef & Arpels Distribution, Inc., are, as a practical matter, identical, and they are referred to collectively and interchangeably as "VCA."

8.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

9.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a)(2), as it is the judicial district in which the underlying action is venued.

## Relevant Background and Facts

10.     Hanover issued a Businessowners Insurance Policy to Goldstein Jewelers, (referred to as the "Businessowners Policy"), under policy number OHY 6952271 - 00, with a policy period of May 9, 2003 through May 9, 2004. A copy of the Businessowners Policy is annexed hereto as **Exhibit "A"** and is fully incorporated herein by reference.

11.     The Businessowners Policy, affords liability coverage, subject to the terms, conditions, definitions and exclusions contained therein, for claims of "personal and advertising injury," as defined therein, caused by an offense committed in the course of advertising of the insured's goods, products or services, but only if the offense was committed in the "coverage territory" during the policy period.

3

12. The Businessowners Policy has a personal and advertising injury limit of $1,000,000.00. The Businessowners Policy includes the following relevant provisions:

### BUSINESSOWNERS COVERAGE FORM

### Section II LIABILITY

### A. Coverages

1. **Business Liability**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described In Paragraph **D – Liability and Medical Expenses Limits Of Insurance in Section II Liability**; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

   b. This insurance applies:

      (1) To "bodily injury" and "property damage" only if:

4

    (a)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (b)   The "bodily injury" or "property damage" occurs during the policy period; and

    (c)   Prior to the policy period, no insured listed under Paragraph **C.1 Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part, if such a listed insured or authorized "employee" knew, prior to the policy period that the "bodily injury" or "property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

  (2) To "personal and advertising injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you but only if the offense was committed in the "coverage territory" during the policy period...

## B. Exclusions

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:...

### p. Personal And Advertising Injury

"Personal and advertising injury":

  (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and

advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is:

    (a) Advertising, broadcasting, publishing or telecasting;

    (b) Designing or determining content or web-sites for others; or

    (c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **16.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F. Liability and Medical Expenses Definitions**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting....

(14) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan....

E.   **Liability And Medical Expenses General Conditions**

2.   **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim.  To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

7

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim of "suit" as soon as practicable.

You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";...

## F.    Liability And Medical Expenses Definitions

(1)    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement....

4.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5.    "Coverage territory" means:

8

(a) The United States of America (including its territories and possessions), Puerto Rico and Canada;...

15. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"....

19. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

9

or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

## BUSINESSOWNERS LIABILITY SPECIAL BROADENING ENDORSEMENT

7.   **Personal and Advertising Injury – Broad Form**

Under **Section II – Liability F. Liability and Medical Expenses Definitions**, definition **16**, paragraph **h.** is added as follows:

h. Discrimination or humiliation (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1)   Not done intentionally by or at the direction of:

(a) The insured; or

(b) Any officer of the corporation, director, stockholder, partner or member of the insured; and

(2)   Not directly or indirectly related to an "employee", nor to the employment, prospective employment or termination of any person or persons by an insured.

10.   **Unintentional Failure to Notify**

Under **Section II – E. Liability and Medical**

10

**Expenses General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit**, paragraph **f.** is added as follows:

f. Your rights afforded under this Coverage Form shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury" or "property damage" is not covered under this Policy.

## The Complaint in the Underlying Van Cleef & Arpels Lawsuit

13.    On or about March 19, 2007, the complaint in the underlying action, entitled Van Cleef & Arpels Logistics, S.A., et al. v. Goldstein Jewelers, et al., was filed in the United States District Court for the District of New Jersey. By order dated March 5, 2008, the underlying action was transferred to the United States District Court for the Southern District of New York. A copy of the complaint in the underlying action is annexed hereto as **Exhibit "B."**

14.    The complaint contains three counts against Goldstein Jewelers. The first count is for trade dress infringement under the Lanham Act, 15 U.S.C. §1125(a). The second count is for Common Law trade dress infringement and unfair competition. The third count is for copyright infringement under 17 U.S.C. §501.

15.    In the complaint in the underlying action, it is claimed that VCA is the owner of all rights, including the copyright in the Alhambra Jewelry Design. It is claimed that the Alhambra Jewelry Design is an original and creative work of VCA and its team of designers, and such design is validly protected by copyright. It is asserted that VCA is the

11

owner of Copyright Registration Number GP 101,958 for the Alhambra Jewelry Design,

which was first received by the Copyright Office on January 7, 1976.

16.     The plaintiffs in the underlying action allege that the Alhambra jewelry

features a distinctive and unique combination of elements that collectively create a

particular trade dress, and that the collection of features that constitute the trade dress

constitute a distinctive trade dress that has secondary meaning.  It is claimed that this

design has been extensively promoted by VCA in the United States and has achieved

significant sales success.  Under the heading "Defendants' Infringing Activities," the

underlying complaint contains the following allegations:

> 20.  On information and belief, defendants have manufactured,
> sold, offered for sale and/or distributed copies of the Alhambra
> Jewelry Design and products embodying the Alhambra Trade Dress.
>
> 21.  No defendant in this action has sought or received a license or
> authorization from the plaintiffs for any purpose whatsoever,
> including for the acts described herein.

17.     In the first count of the underlying complaint, which is for trade dress

infringement under the Lanham Act, the plaintiffs allege that the defendants have

"reproduced, copied and imitated the Alhambra Trade Dress in designing certain of their

jewelry in a manner that is confusingly similar to the distinctive trade dress of VCA."  It is

alleged that the defendants' adoption and use of the Alhambra Trade Dress constitutes

trade dress infringement and deliberate and willful violations of §43(a) of the Lanham Act,

15 U.S.C. §1125(a).  The plaintiffs seek monetary damages as well as injunctive relief

under this count.

18.     The second count of the underlying complaint is for Common Law trade dress

12

infringement and unfair competition, includes similar allegations of wrongful copying and imitation by the defendants of the Alhambra Trade Dress in designing certain of their jewelry in a manner that is confusingly similar to the distinctive trade dress of VCA. It is claimed that these actions constitute Common Law trade dress infringement and unfair competition. Again, the plaintiffs seek injunctive relief and monetary damages in excess of $25,000.

19.     The third count of the underlying action is for copyright infringement under the Copyright Act – 17 U.S.C. §501. It is alleged that the defendants have infringed upon VCA's copyright by "reproducing such design without authorization and distributing copies thereof by sale and other means, and/or contributing to or inducing the reproduction and distribution of said design." Again, the underlying plaintiffs seek monetary damages in excess of $25,000, as well as an injunction prohibiting Goldstein Jewelers from infringing activity.

### The Untimely Notice of the Underlying Action to Hanover and
### Hanover's Offer of a Defense Under a Full Reservation of Rights

20.     Hanover first received notice from Goldstein Jewelers of the underlying action and the claims asserted therein when a copy of the complaint was faxed to Hanover's Worcester, Massachusetts office on October 31, 2008. Contemporaneous with the delivery by facsimile of the complaint to Hanover on October 31, 2008, Goldstein Jewelers requested a defense from Hanover pursuant to the terms of the subject Hanover Businessowners Policy for the claims in the underlying action.

21.     On November 3, 2008, Hanover issued a letter to Goldstein Jewelers' counsel, advising Goldstein Jewelers that Hanover was conducting an investigation of the

13

claims asserted in the underlying action under a full reservation of Hanover's rights under the policy. A copy of Hanover's initial reservation of rights letter is annexed hereto as **Exhibit "C"** and is incorporated herein by reference. In addition to the November 3, 2008 reservation of rights letter, Hanover's regional general adjuster, Stan B. Watson, had telephone discussions with Goldstein Jewelers' counsel, requesting information relevant to the underlying action. In these telephone calls and in the November 3, 2008 letter, Hanover requested information regarding any alleged advertising of the jewelry items that are the subject of the underlying action (the "accused items").

22.     After conducting further investigation, Hanover issued another reservation of rights letter to Goldstein Jewelers' counsel dated December 5, 2008. A copy of same is annexed hereto as **Exhibit "D"** and is incorporated herein by reference. In the December 5, 2008 reservation of rights letter, Hanover advised that it was offering a defense to Goldstein Jewelers in the underlying action subject to a full reservation of all of Hanover's rights under the insurance policy and subject to the disclaimers and conditions set forth therein. In its reservation of rights letter, Hanover stated that it was offering a defense, subject to a full reservation of rights, limited to the reasonable defense costs incurred in the defense of potentially-covered claims. Hanover reserved the right to seek recoupment of any defense costs incurred in the defense of non-covered claims.

23.     In its reservation of rights letter, Hanover asserted that while the complaint, construed liberally, created the possibility of a covered claim, it was very possible that further investigation and discovery would confirm that there was no coverage available for any of the claims asserted in the complaint. Among the rights reserved by Hanover was

14

the right to disclaim coverage, in whole or in part, at any time.

24.    In the December 5, 2008 reservation of rights letter, Hanover asserted
multiple defenses to coverage, including that there would be no coverage pursuant to the
"personal and advertising injury" section of the policy unless the claim fell within the
relevant policy definition for "personal and advertising injury," and the enumerated offense
and any resulting injury was caused by the insured's "advertisement." Hanover advised
that "based upon the lack of any evidence of any relevant 'advertisements,' it appears, at
this juncture, that there will be no coverage available for any of the claims, allegations and
counts in the subject lawsuit."

## Hanover's Denial of Coverage to Goldstein Jewelers

25.    On or about February 16, 2009, Goldstein Jewelers' counsel provided copies
of discovery materials generated in the course of the underlying action. Upon review and
analysis of these discovery materials, Hanover determined that Goldstein Jewelers had
never advertised any of the accused items.

26.    In Goldstein Jewelers' responses to plaintiff's first set of interrogatories in the
underlying action, Goldstein Jewelers answered interrogatory 5 as follows:

> Interrogatory 5: Identify all advertisements by defendant of
> the ACCUSED ITEMS and identify all documents that
> concern such advertisements.
>
> Response to Interrogatory 5: Defendant objects to
> interrogatory #5 on the grounds that it's outside the scope of
> local rules, it's overly broad or unduly burdensome, vague,
> ambiguous, not relevant to any claim in the pleadings, nor is
> it reasonably calculated to lead to the discovery of admissible
> evidence in that it calls for the disclosure of "all persons."
>
> Subject to and without waiver of the foregoing general or

specific objections, defendant responds as follows: none. (Copy of Goldstein Jewelers Interrogatory Responses annexed hereto as **Exhibit "E."**)

27. On August 7, 2008, a deposition of Goldstein Jewelers was taken by the plaintiffs in the underlying action. Appearing as a witness on behalf of Goldstein Jewelers was its president, Devorah Fleishman. During her deposition, Ms. Fleishman clearly testified that Goldstein Jewelers never advertised any of the accused items. (**Exhibit "F"**, copy of deposition transcript of Devorah Fleishman, page 31).

28. Based upon the discovery materials provided by Goldstein Jewelers, Hanover issued a letter to Goldstein Jewelers' counsel dated March 20, 2009 in which Hanover denied and disclaimed coverage to Goldstein Jewelers for all counts, claims and causes of action in the underlying action. (**Exhibit "G"**). The contents of Hanover's denial and disclaimer letter are referred to as if fully set forth herein. Among the grounds for denying coverage, Hanover asserted that the discovery materials provided established that "Goldstein Jewelers never published or broadcasted any 'advertisements' of the jewelry items at issue in the subject lawsuit," and that "the claims in the subject lawsuit fall entirely outside the scope of the 'personal and advertising injury' coverage provided by the policy." Hanover asserted that because all of the claims in the subject lawsuit fall entirely outside the scope of coverage under the subject Hanover insurance policy, Hanover owes no duty to defend or indemnify Goldstein Jewelers in the subject lawsuit.

29. In addition to asserting that all of the claims and counts in the underlying action fell outside the scope of the insuring agreement of the policy, Hanover asserted that policy Exclusions p(14), p(1), p(2) and p(3) applied, and that no coverage would be

16

afforded.  Hanover also reserved its rights with regard to all other policy exclusions.

30.    Hanover denied and disclaimed coverage for the claims for punitive damages
in the complaint.  Punitive damages are not insurable under New Jersey law.  Additionally,
claims for punitive damages fall outside the scope of coverage and are excluded under
Exclusions p(1) and p(2).

31.    Hanover denied and disclaimed coverage for the claims in the complaint for
injunctive or equitable relief, as such claims do not seek "damages" and are therefore
outside the scope of coverage.  Hanover further denied and disclaimed coverage for the
statutory claims for attorneys' fees, costs, treble damages and other statutory enhanced
damages.  Such claims do not constitute "damages" within the meaning of the policy and
are outside the scope of coverage.

32.    Hanover also reserved all of its rights with regard to the breach of the
insured's "duties in the event of occurrence, offense, claim or suit," which are set forth
under Section E "Liability and Medical Expenses General Conditions."  In addition to
breaching the notice provisions of the policy, Hanover has recently learned that the insured
has breached the policy conditions requiring that the insured cooperate with Hanover in the
defense of any lawsuit.  Hanover has learned that the insured's selected defense counsel
has failed to keep Hanover advised of significant developments in the lawsuit, including
mediation that had been ordered by the Court.

33.    While Hanover asserted that it owed no duty to defend or indemnify Goldstein
Jewelers, Hanover offered to continue to provide Goldstein Jewelers with a conditional
defense in the underlying action, subject to a full reservation of all of Hanover's rights, until

17

such time that the rights and obligations of the parties had been adjudicated in an imminent declaratory judgment action.

34. Hanover's disclaimer and denial of coverage to Goldstein Jewelers was and is entirely proper and effective, and Hanover owes no duty to defend or indemnify Goldstein Jewelers for any of the claims, counts or causes of action asserted in the underlying action.

## Count I: For a Declaratory Judgment

35. Plaintiff repeats and reiterates each and every allegation set forth above as if fully set forth herein.

36. Based upon the foregoing, Hanover requests that this Court issue a declaratory judgment setting forth the obligations of the parties, if any, pursuant to the terms of the subject insurance policy, and stating that pursuant to the terms, conditions, definitions and exclusions contained therein, Hanover owes no obligation to defend or indemnify Goldstein Jewelers or any other party that may be considered an insured under the subject insurance policy with regard to any of the claims, counts and causes of action asserted in the underlying action, and that Hanover owes no duty to indemnify Goldstein Jewelers or any other individual or entity that may be considered an insured for any damages, settlements, verdicts or judgments, costs or fees that may arise out of the underlying action.

37. Because Hanover has paid defense costs to Goldstein Jewelers for claims which are not covered under the policy, pursuant to New Jersey law, Goldstein Jewelers is obligated to reimburse Hanover for all defense costs provided by Hanover in the defense of

18

the underlying action.

38.    Plaintiff has no adequate remedy at law.

39.    Plaintiff requests a trial by jury.

## Count II: Unjust Enrichment

40.    Hanover repeats and reiterates all of the allegations set forth in ¶¶1-39 above as if fully set forth herein.

41.    Goldstein Jewelers has wrongfully and unjustly received and retained the defense costs provided by Hanover, despite the fact that no coverage obligation is owed by Hanover under the policy terms.

42.    Hanover has no adequate remedy at law.

## Relief Sought

WHEREFORE, plaintiff demands judgment against the defendants as follows:

   (A)    on Count One, Hanover requests that this Court issue a declaratory judgment setting forth the obligations of the parties, if any, pursuant to the terms of the subject insurance policies, and stating that Hanover owes no obligation to defend or indemnify Goldstein Jewelers or any other individual or entity that may be considered an insured under the subject insurance policy with regard to any of the claims and counts asserted in the underlying action, and that Hanover owes no obligation to indemnify Goldstein Jewelers or any other individual or entity that may be considered an insured for any damages, settlements, verdicts, judgments, costs or fees that may arise out of

19

the underlying action;

(B)     that Goldstein Jewelers is obligated and ordered to reimburse Hanover for all defense costs paid by Hanover in the defense of the underlying action;

(C)     that Hanover be awarded such other and further relief as this Court may deem just, proper and equitable under the circumstances; and

(D)     on Count II for unjust enrichment, ordering Goldstein Jewelers to reimburse Hanover for all sums that Hanover has paid to Goldstein Jewelers as defense costs in this action, and for such other and further relief as the Court deems just, proper and equitable.

Dated:  New York, New York
        May 5, 2009

Michael P. Kandler (MPK8683)
CALLAN, KOSTER, BRADY & BRENNAN,LLP
Attorneys for Plaintiff
One Whitehall St.-10th Floor
New York, NY 10004
(212) 248-8800/6815-Fax#

20